**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VAL DAY, et al.,<br><br>            Plaintiff(s),<br><br>v.<br><br>FORMAN AUTOMOTIVE GROUP, et al.,<br><br>            Defendant(s). | 2:12-CV-577 JCM (CWH) |

**ORDER**

Presently before the court is defendant United Nissan's motion for summary judgment. (Doc. # 35). Plaintiff Val Day filed a response (doc. # 43), and defendant filed a reply (doc. # 52).

**I.     Background**

The instant case involves claims of racial discrimination in violation of Title VII by plaintiff Val Day against his former employer, defendant United Nissan.

Plaintiff Day was employed by defendant from October 5, 2008, to May 18, 2010, as an auto salesman. Plaintiff Day alleges that several specific incidents took place throughout his employment in which members of defendant's management staff used racial slurs and referred to him using derogatory racial epithets. Specifically, he recounts that in a business meeting 2009, Donald Forman, the owner of United Nissan, stated that the dealership was going to hold a "niggeration sale" following the inauguration of President Barack Obama. (Doc. 43 p. 2:8). Plaintiff Day also states that, throughout his employment, Nick Voss, the general sales manager of United Nissan, would

**James C. Mahan**
**U.S. District Judge**

frequently refer to plaintiff Day as "Sambo." Plaintiff Day alleges that Voss was never reprimanded for these derogatory remarks.

On May 18, 2010, a physical altercation broke out between plaintiff Day and Chris Cadot, another auto salesman employed by defendant. The incident occurred when Mr. Cadot began working with a customer who had originally approached plaintiff Day about purchasing a vehicle. Plaintiff Day confronted Mr. Cadot, and an argument ensued. The argument escalated into yelling, and Mr. Cadot struck plaintiff Day in the eye. Shortly after, Ron Wheeler, a general sales manager at United Nissan, broke up the argument. As he walked away, plaintiff Day was bleeding from a cut above his right eye.

Mr. Wheeler then allegedly told plaintiff Day to go home. At this time, plaintiff Day walked into the parts department of the dealership, retrieved a metal pipe, and proceeded back toward the showroom. When plaintiff Day was about to enter the showroom, United Nissan's general manager, Robert Plakinger, told plaintiff Day not to enter the showroom with the metal pipe. Despite this, plaintiff Day walked through the showroom with the metal pipe in hand before exiting into the parking lot and departing from the premises. Plaintiff Day did not return to the dealership that day.

After conducting an investigation into the altercation, United Nissan terminated plaintiff Day's employment. Mr. Cadot was suspended for three days without pay for his involvement in the incident.

Plaintiff Day now alleges that defendant violated Title VII as well as Nev. Rev. Stat. § 613.330 by punishing him more severely based on his status as an African American. For the purposes of the instant motion, the court will analyze the federal and state discrimination claims together. *See Apeceche v. White Pine Cnty.*, 615 P.2d 975, 977 (Nev. 1980) ("NRS 613.330(1) is almost identical to § 703(a)(1) of Title VII of the Civil Rights Act of 1964.").

II.   **Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to
2  isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24
3  (1986).

4        In determining summary judgment, a court applies a burden-shifting analysis. "When the
5  party moving for summary judgment would bear the burden of proof at trial, it must come forward
6  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.
7  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue
8  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213
9  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

10        In contrast, when the nonmoving party bears the burden of proving the claim or defense, the
11  moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
12  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to
13  make a showing sufficient to establish an element essential to that party's case on which that party
14  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails
15  to meet its initial burden, summary judgment must be denied and the court need not consider the
16  nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

17        If the moving party satisfies its initial burden, the burden then shifts to the opposing party
18  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
19  *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
20  party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
21  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions
22  of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th
23  Cir. 1987).

24        In other words, the nonmoving party cannot avoid summary judgment by relying solely on
25  conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045
26  (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
27  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  for trial. *See Celotex Corp.*, 477 U.S. at 324.

2      At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.    Analysis**

    <u>a.</u>    <u>Prima Facie Case</u>

    Title VII claims are to be analyzed through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this analysis, plaintiffs must first establish a prima facie case of employment discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). "Establishing a prima facie Title VII case in response to a motion for summary judgment requires only minimal proof and does not even need to rise to the level of a preponderance of the evidence." *Palmer v. Pioneer Assocs, Ltd.*, 338 F.3d 981, 984 (9th Cir. 2003) (internal citations and quotations omitted).

    To establish a prima facie case, plaintiff must present evidence showing: (1) he is a member of a protected class; (2) he was performing his job in a satisfactory manner; (3) he suffered an adverse employment action; and (4) that similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See, e.g.*, *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011).

    Plaintiff alleges and defendant does not dispute that plaintiff is an African American, and therefore a member of a protected class. *See* 42 U.S.C. § 2000e(a)(1); Nev. Rev. Stat. § 613.330(1).

    Plaintiff claims and defendant does not dispute that plaintiff was an effective salesman who had received awards for his work performance.

. . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

Plaintiff and defendant agree that plaintiff was terminated from his employment, which is certainly an adverse employment action.

The evidence provided by plaintiff also shows that Mr. Cadot, a white man who was allegedly the aggressor, received only a three-day suspension while plaintiff Day was terminated due to the incident. Similarly, there is sufficient evidence from which a jury could conclude that defendant's management frequently used derogatory racial epithets to refer to plaintiff Day and other African-American employees.

Therefore plaintiff Day has sufficiently established a prima facie case of Title VII discrimination.

### b. Legitimate, Nondiscriminatory Reasons

"If plaintiffs establish a prima facie case, the burden of production, not of persuasion, shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1155 (internal citations and quotations omitted). "If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination." *Id.*

Here, defendant has provided evidence demonstrating that it terminated plaintiff Day's employment based on his conduct of retrieving a metal pipe and walking across the showroom despite a direct request from management not to do so. Defendant also contends that while Mr. Cadot provided a full account of the incident to his superiors, plaintiff Day never volunteered information about the events that took place during the altercation.

Based on these events, defendant claims that plaintiff Day's insubordination after the altercation justified termination rather than mere suspension. Defendant, therefore, carries its burden of providing evidence that there was a legitimate, nondiscriminatory reason to terminate plaintiff.

### c. Pretext

"A plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the

1  employer." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1171 (9th Cir. 2007) (internal citations, quotations, and alterations omitted). "All the evidence as to pretext–whether direct or indirect–is to be considered cumulatively." *Id.*

In plaintiff Day's account of the events, management at United Nissan immediately questioned Mr. Cadot following the altercation. Plaintiff Day claims that defendant never asked him for his side of the story prior to his termination. Furthermore, plaintiff Day claims that his supervisor told him to leave the premises after the fight took place, and that he retrieved the metal pipe and walked through the showroom where people could see him to ensure his safety. Plaintiff Day asserts that his supervisors never inquired as to why he was carrying the metal pipe or assured him that he was safe after Mr. Cadot struck him.

Plaintiff Day's account indicates that defendant's explanation is internally inconsistent. Taken as true, his evidence shows that: (1) he was the victim of an unprovoked attack by a white co-worker; (2) after the attack, his supervisors, who frequently referred to African Americans using derogatory terms or tolerated such remarks, questioned only his attacker about what had taken place; and (3) that his attacker was only suspended while plaintiff Day was terminated.

When viewed in the light most favorable to plaintiff Day, there is sufficient evidence from which a reasonable fact finder could conclude that plaintiff Day's termination was motivated by his race.

Defendant cites *Nesbit v. Pepsico, Inc.* for the assertion that "stray remarks" cannot serve as substantial evidence of discriminatory intent. 994 F.2d 703, 705 (9th Cir. 1993). However, in that case, the defendant made only two remarks indicating a discriminatory mentality. Here, there is not only evidence indicating that United Nissan's owner stated that there was to be a "niggeration sale," but also evidence indicating that a manager regularly referred to plaintiff Day and other African-American employees using derogatory racial epithets and was never reprimanded.

Accordingly, the court finds that plaintiff Day has provided evidence that there were more than mere "stray remarks" indicating that defendant possibly held animus toward African-American employees. Even though the individuals that made those statements may not have been the ones that

**James C. Mahan**
**U.S. District Judge**

- 6 -

terminated plaintiff Day, the regularity of these comments and the lack of a response by defendant's upper management provides evidence from which a reasonable juror could conclude that plaintiff Day's termination was a result of racial discrimination.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion for summary judgment (doc. # 35) be, and the same hereby is, DENIED.

DATED February 4, 2014.

_____
**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 7 -